**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| SHAWN M.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25-cv-3042-CJW<br><br>**REPORT AND RECOMMENDATION** |

Shawn M. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed in part** and **reversed in part**.

## ***I. BACKGROUND***

Claimant was born in 1974. (AR[1] at 87.) She is a high school graduate and attended two years of college. (*Id*. at 252.) Claimant allegedly became disabled due to alcoholism, cirrhosis, bipolar disorder, anxiety disorder, depression, PTSD, and systemic psoriasis. (*Id*. at 251.) Claimant's onset of disability date is February 14, 2021. (*Id*. at 18, 186.) On June 30, 2022, Claimant protectively filed her application for DIB. (*Id*. at 18, 87.) Her claim was denied originally on December 22, 2022 (*id*. at 87-96) and was denied on reconsideration on May 13, 2023. (*Id*. at 97-107.) A hearing was

[1] "AR" cites refer to pages in the Administrative Record.

held on April 1, 2024, with Claimant appearing without representation by online video before Administrative Law Judge ("ALJ") Michael Larner. (*Id.* at 47-86.) Vocational Expert ("VE") Carma Mitchell also appeared at the hearing. (*Id.*) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on June 14, 2024. (*Id.* at 18-36.)

Claimant requested review and the Appeals Council denied review on May 19, 2025. (*Id.* at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On June 22, 2025, Claimant timely filed her Complaint in this Court. (Doc. 4.) On December 8, 2025, all briefing was completed, and the Honorable C.J. Williams, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## ***II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF***

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

> supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

### *A. The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through June 30, 2027. (AR at 20.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from her alleged onset date of February 14, 2021. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: depressive disorder, anxiety disorder, and alcohol use disorder. (*Id.* at 21.) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 24.) The ALJ evaluated Claimant's claims under listing 12.04 (depressive disorders) and 12.06 (anxiety disorders). (*Id.*) The ALJ also determined that Claimant did not satisfy either the "paragraph B" or "paragraph C" criteria. (*Id.* at 24-26.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to understanding, remembering, and completing simple routine tasks but not at a production rate pace; and is able to adapt to only simple changes in a work setting.

(*Id.* at 26.) Also at the fourth step, the ALJ determined that Claimant was unable to perform her past relevant work. (*Id.* at 34.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including cafeteria attendant, mail clerk, and routing clerk. (*Id.* at 35.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 36.)

### *B. The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be

drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## *III. DISCUSSION*

Claimant alleges that the ALJ committed reversible error by (A) committing a *Gann/Dowden* error with regard to 1-2 step commands; and (B) failing to fully and fairly develop the record concerning physical limitations related to her left foot. (Doc. 9.)

### *A.* **Gann/Dowden** *Error*

#### *1. Parties' Arguments*

Claimant argues that under the operative opinion regulations at the time of the ALJ's decision and relying on *Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017), "when an ALJ afford[s] significant weight to an opinion, the ALJ must explain why portions of such an opinion more limiting than the ALJ's RFC determination are not adopted in the ALJ's RFC." (Doc. 9 at 17.) Claimant asserts that "[b]oth agency psychological consultants . . . found [Claimant] was limited to 'simple, repetitive tasks consisting of 1-2 step commands.'" (*Id.* at 18) (citing AR 94, 105). Claimant maintains that the "lack of explanation for dropping the '1-2 step commands' limitation was harmful because the Reasoning Level 2 and 3 jobs the VE identified would have conflicted with that limitation had it been included per the DOT." (*Id.*) Claimant concludes that the Court should reverse and remand her case:

> for further development on these *Gann v. Berryhill* issues at step five of the sequential evaluation process, and to explain following the articulation requirements of 20 C.F.R. § 404.1520c(b)(2) what the ALJ intends to find concerning the important "1-2 step commands" limitation in this case, as

> the ALJ's *Gann/Dowden* errors concerning the psychological consultant opinions led to a denial of benefits not supported by substantial evidence.

(*Id.* at 19.)

The Commissioner argues that "substantial evidence supports the ALJ's mental RFC finding, and the ALJ fully complied with the requirements of 20 C.F.R. § 404.1520c." (Doc. 10 at 6.) The Commissioner asserts that:

> Contrary to Plaintiff's argument, state agency psychological consultants Jonathan Brandon, Ph.D., and Erin Pederson, Ph.D., did not limit Plaintiff to the performance of 1-2 step tasks in their prior administrative medical findings (Tr. 33). In December 2022, Dr. Brandon noted that Plaintiff would have "some difficulty" with understanding, remembering, and carrying out detailed instructions, and then also noted that Plaintiff would have no trouble with 1-2 step tasks (Tr. 33, 94). Dr. Pederson affirmed his finding in May 2023 (Tr. 33, 105). But noting that Plaintiff would have "some difficulty" with tasks involving detailed instructions is not equivalent to a finding that Plaintiff would be entirely precluded from performing such tasks.

(*Id.*) The Commissioner also argues that:

> Furthermore, the ALJ did not expressly find the prior administrative medical findings of Drs. Brandon and Pederson fully persuasive. Reading the ALJ's entire decision in context, the ALJ did, indeed, determine that their findings were persuasive "overall" (Tr. 33). However, he explained that he was persuaded by their opinion to the extent they considered Plaintiff capable of performing simple, repetitive tasks (Tr. 33).

(*Id.*) The Commissioner concludes that "[s]ubstantial evidence supports the ALJ's RFC finding, and the ALJ's evaluation of the prior administrative medical findings complied with 20 C.F.R. § [404.]1520c." (*Id.* at 7.)

### ***2. Pertinent Medical Evidence***

Dr. Brandon, the initial state agency consultant to review Claimant's medical records opined that:

> The claimant's mental MDIs are best assessed under listings 12.04 and 12.06. Use of substances during the timeframe under review creates a partial inconsistency with the claimant's allegations of limitation. The evidence indicates that the claimant appears to experience episodes of auditory hallucinations primarily within the context of alcohol withdrawal. When abstinent from substances, mood and anxiety are improved, but some limitations of functioning do exist. Cognition is largely intact, and the claimant reports the ability to independently complete a number of ADLs, including providing care for her mother. Thus, basic work is not precluded. The evidence indicates that the claimant will have some difficulty concentrating for extended periods, remembering, understanding, and carrying out detailed instructions, and interruption to the ability to keep pace from psychologically-based symptoms. However, *the claimant retains the mental capacity to perform simple, repetitive tasks consisting of 1-2 step commands*.

(AR at 94) (emphasis added). On reconsideration, Dr. Pederson specifically noted Dr. Brandon's finding that "the claimant retains the mental capacity to perform simple, repetitive tasks consisting of 1-2 step commands" and determined that "[a]ll the information in file has been reviewed and the initial assessment is considered persuasive" and the "prior administrative medical opinion provided at the initial level is consistent with the objective evidence is supported by other information in file." (*Id.* at 105.)

***3. Relevant Law***

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Section 404.1520c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." *Id.* § 404.1520c(b)(2). The ALJ "may,

but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Level 1 reasoning is defined in the DOT "as the ability to '[a]pply commonsense understanding to carry out simple one-or-two-step instructions.'" *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (alteration in original) (quoting *Dictionary of Occupational Titles* (4th ed. 1991) at 1011). Level 2 reasoning is defined in the DOT "as the ability to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'" *Id.* (alteration in original) (quoting DOT at 1011). Level 3 reasoning "requires the ability to apply 'commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.'" *Thomas v. Berryhill*, 881 F.3d 672, 677 (8th Cir. 2018) (quoting *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010)).

In *Dowden v. Saul*, No. 19-CV-2054-KEM, 2020 WL 6470180 (N.D. Iowa Nov. 3, 2020), the district court addressed failure of an ALJ to adopt a limitation found by state agency psychological consultants. The district court explained that prior to the regulation changes outlined above:

> courts routinely held that remand may be required when the ALJ assigned great weight to the opinion of a state agency consultant but without explanation, found the claimant less limited than the state agency

> consultant. *See Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017) (holding that the ALJ erred by assigning "significant weight" to opinions of state agency consultants but failing to adopt some of their opined limitations); *Johnson v. Comm'r of Soc. Sec.*, No. 17-CV-3045-LTS, 2018 WL 4868986, at *5 (N.D. Iowa Aug. 27, 2018) (collecting cases from district courts in the Eighth Circuit remanding "when the ALJ purportedly g[ave] 'great weight' to the opinion of a state agency consultant but fail[ed] to adopt some of the limitations contained in that opinion without explanation"), *report and recommendation adopted*, 2018 WL 4489458 (Sept. 19, 2018); *see also Block v. Saul*, No. C18-118-LTS, 2020 WL 1505566, at *6-7 (N.D. Iowa Mar. 30, 2020) (noting that remand is not required when the ALJ assigns significant weight to the opinions of state agency consultants and fails to adopt one of their limitations as long as the ALJ's opinion as a whole "adequately articulate[s] reasons" for the failure).

*Id*. at *7. Turning to the new regulations, again outlined above, the district court explained that:

> The new regulations explicitly provide that the ALJ must explain how persuasive, supported, and consistent a medical opinion is (including a medical opinion from a state agency consultant). The purpose of this regulation would be undermined if the ALJ could state a medical opinion was persuasive, well-supported, and consistent with the record, without adopting the limitations contained in that opinion or otherwise addressing them.

*Id*. Further, the district court discussed the ALJ's failure to address why the state agency consultant's one-or-two-step task limitation was not adopted:

> Because the ALJ did not explain the failure to adopt the one-or-two-step-tasks limitation, it is unclear whether the ALJ believed his RFC determination captured this limitation, or whether the ALJ found this limitation unsupported or inconsistent with the record. . . .
>
> Substantial evidence does not support the ALJ's failure to include a limitation to jobs involving only one-or two-step tasks. *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (holding that an ALJ's RFC determination must be supported by some medical evidence from a medical

professional). Remand is required for the ALJ to further address the state agency consultants' opinions.

*Id*. at *8.

#### *4. Analysis*

In addressing the state agency psychologist consultants, the ALJ determined that:

> The psychological consultants found the claimant had moderate limitations understanding, remembering, or applying information, mild limitations interacting with others, moderate limitations concentrating, persisting, or maintaining pace, and moderate limitations adapting or managing oneself. The consultants opined the claimant would have some difficulty concentrating for extended periods, remembering, understanding, and carrying out detailed instructions, and interruption to the ability to keep pace from psychologically based symptoms; however, found she retained the mental capacity to perform simple, repetitive tasks consisting of 1-2 step commands (Exhibits 2A; 4A).
>
> Overall, the undersigned finds the opinions persuasive, supporting an ability to perform simple, repetitive, unskilled work tasks. Both sources adequately supported their findings with a detailed explanation of the evidence available when they offered their opinions, respectively. For instance, the consultants noted reviewing mental health records since October 2020, noting an alcohol induced anxiety disorder (Exhibit 2F, p. 1). In June 2021, they reviewed the claimant's hospitalization for detoxing from alcohol, where she reported anxiety and hallucinations (Exhibit 1F). In July 2021, they reviewed primary care records noting sobriety with normal mental status findings (Exhibit 2F, p. 31). Subsequently, the consultants noted ongoing issues with alcohol during exams in early 2022 (Exhibit 6F, pp. 2 and 8). In May 2022, they reviewed records noting she was recommended for inpatient substance abuse treatment (Exhibit 4F). The following month, she was seen for complaints of hallucinations once again in the context of abusing alcohol and going through withdrawal (Exhibit 5F). The consultants reviewed psychiatric records throughout this period and noted in November 2022 she had been sober over a month, was planning a trip to visit her boyfriend's family out of state, was keeping busy doing puzzles, and reported improvement of mood and anxiety (Exhibits 7F; 10F; 12F; 17F). On reconsideration, the consultant noted the claimant

> reported stressed and anxious mood with increased Abilify (Exhibits 19F, p. 14; 21F, p. 1). Consistently, psychiatric records from September 2023 to March 2024 noted some ongoing variable depression and anxiety symptoms; however, mental status findings were largely normal and showed stability on medications (Exhibit 24F, pp. 8, 14, 19, and 23).

(AR at 33-34.)

The Commissioner's argument that "[c]ontrary to Plaintiff's argument, state agency psychological consultants Jonathan Brandon, Ph.D., and Erin Pederson, Ph.D., did not limit Plaintiff to the performance of 1-2 step tasks in their prior administrative medical findings," is incorrect. Dr. Brandon, affirmed on reconsideration by Dr. Pederson, specifically stated:

> The evidence indicates that the claimant will have some difficulty concentrating for extended periods, remembering, understanding, and carrying out detailed instructions, and interruption to the ability to keep pace from psychologically-based symptoms. However, *the claimant retains the mental capacity to perform simple, repetitive tasks consisting of 1-2 step commands*.

(*Id.* at 94) (emphasis added). I am also unpersuaded by the Commissioner's argument that "the ALJ did not expressly find the prior administrative medical findings of Drs. Brandon and Pederson fully persuasive." The Commissioner's reading of the ALJ's decision that "the ALJ did, indeed, determine that their findings were persuasive 'overall'" but only "to the extent they considered Plaintiff capable of performing simple, repetitive tasks," is a nonsensical reading of "overall." In his decision, the ALJ states that the psychologist consultants determined that Claimant "*retained the mental capacity to perform simple, repetitive tasks consisting of 1-2 step commands*." (*Id.* at 33) (emphasis added). The ALJ found the psychologist consultants' opinions "overall" persuasive. The ALJ did not limit this finding of persuasiveness, indicating that the ALJ's use of "overall" did not somehow remove the performance of simple, repetitive

tasks as consisting of more than 1-2 step commands. The plain reading of the ALJ's decision is that he found the psychologist consultants' opinion that Claimant "retained the mental capacity to perform simple, repetitive tasks consisting of 1-2 step commands" persuasive.

However, in his RFC, the ALJ limited Claimant to "understanding, remembering, and completing simple routine tasks but not a production rate pace[.]" (*Id.* at 26.) Even though the ALJ found the psychologist consultants' opinions persuasive, he did not include the limitation to "simple, repetitive tasks consisting of 1-2 step commands" in the RFC assessment. The ALJ did not explain this omission. Furthermore, this is not a harmless error because at step five, the representative jobs the ALJ determined Claimant could perform cafeteria attendant and routing clerk are reasoning Level 2 jobs and the mail clerk job is reasoning Level 3. *See* DICOT 311.677-010 (G.P.O), 1991 WL 672694; DICOT 222.687-022 (G.P.O), 1991 WL 672133; DICOT 209.687-026 (G.P.O), 1991 WL 671813. This is significant because tasks consisting of 1-2 step commands involve Level 1 reasoning. *See Moore*, 623 F.3d at 604 (providing that Level 1 reasoning is defined in the DOT "as the ability to '[a]pply commonsense understanding to carry out simple one-or two-step instructions'") (alteration in original) (quoting *Dictionary of Occupational Titles* (4th ed. 1991) at 1011).

As discussed in *Dowden*, the regulations "explicitly provide that the ALJ must explain how persuasive, supported, and consistent a medical opinion is (including a medical opinion from a state agency consultant)" and if an ALJ "could state a medical opinion was persuasive . . . without adopting the limitations contained in the opinion or otherwise addressing them," then the requirements of the regulation would be pointless. 2020 WL 6470180 at *7. Thus, like in *Dowden*, I find that "[b]ecause the ALJ did not explain the failure to adopt the one-or-two-step-tasks limitation, it is unclear whether the ALJ believed his RFC determination captured this limitation, or whether the ALJ found

this limitation unsupported or inconsistent with the record." *Id.* at *8. Accordingly, I recommend that the Court remand this matter for the ALJ to fully address the psychologist consultants' opinions.

### *B. Whether the ALJ Fully and Fairly Developed the Record with regard to Claimant's Foot Pain*

#### *1. Parties' Arguments*

Claimant argues that the "ALJ found [Claimant's] severe physical impairment relating to her left foot was non-severe as there was no evidence this impairment cause more than minimal limitations for any continuous 12-month period." (Doc. 9 at 19-20.) Claimant asserts that her left foot issues "spanned well over 12 months and were severe and limiting enough to cause her to need surgery, be limited in ambulation, require several injections, and gain so much weight she became prediabetic by the time of [the] hearing[.]" (*Id.* at 20.) Claimant points out that she had foot surgery in February 2023 and in March 2024 EMG testing on her foot found abnormalities including mild polyneuropathy requiring "job modification," "pain management," "physical therapy," and "falls prevention." (*Id.* at 20-21; AR at 1040.) Claimant concludes that "[r]emand is warranted for record development to ensure podiatry records are complete followed by a medical expert review of the record to inform the ALJ's analysis of at least [Claimant's] left foot-related limitations." (*Id.* at 21.)

The Commissioner argues that "[g]iven Plaintiff's normal functioning up to the time of her surgery, and her unremarkable clinical examination findings after a suitable recovery period, substantial evidence supports the ALJ's conclusion that Plaintiff's left foot impairment was non-severe." (Doc. 10 at 11.) The Commissioner maintains that the "record was reasonably complete and contained sufficient evidence from which the ALJ could make an informed decision." (*Id.* at 12.)

### *2. Relevant Law*

The ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008). Ultimately,

> the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. *Snead*, 360 F.3d at 836; 20 C.F.R. § 404.1512. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir.1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

Additionally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination [may be purchased] to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." *Id*. For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

### *3. Analysis*

In his decision, the ALJ addressed Claimant's left foot issues as follows:

> In February 2023, the claimant underwent a preoperative evaluation for a left foot heel spur surgery. She reported pain at the level of 6/10 during this evaluation. On evaluation, she appeared in no acute distress. She had

normal gait and station with otherwise unremarkable physical examination findings (Exhibit 19F, p. 6). On February 14, 2023, she underwent surgery for removal of the left heel spur with her podiatrist and she was discharged with use of a knee walker for non-weight bearing status postoperatively (Exhibits 18F, p. 13; 20F, p. 1). By March 2023, one month following surgery, the claimant reported improved pain rated 3/10. She reported some numbness in the toes. She had been non-weight bearing in a CAM boot but was placed on partial weight bearing at this time. Physical exam findings showed the claimant as alert, oriented, and in no acute distress. She had intact monofilament testing, normal 5/5 strength throughout, full range of motion without crepitation, and symmetric gait and stance (Exhibit 20F, p. 12). In April 2023, the claimant alleged pain, swelling, numbness, and tingling; however, she was ambulating weight bearing in normal shoes. Inconsistent with her allegations/testimony, she was alert, oriented, and in no acute distress. She had intact monofilament testing, normal strength, normal range of motion, and symmetric gait (Exhibit 22F, p. 1).

In May and July 2023, the claimant alleged 6/10 level pain and having numbness in the left foot. However, she was noted as ambulating in sandals. On physical exam, she was alert, oriented, and in no acute distress. She had normal monofilament testing in May and diminished in July. The podiatrist noted normal strength and range of motion throughout the lower extremity, including symmetric gait. Due to painful scar tissue, the doctor provided Kenalog injections into the scar tissue during these exams (Exhibit 25F, pp. 1 and 5). During a July 2023 GI evaluation, providers noted normal range of motion and normal gait (Exhibit 23F, p. 21). In August 2023, podiatry follow-up noted complaints of left foot pain and numbness; however, physical examination was unremarkable. She presented in no acute distress, monofilament testing was intact, there was no edema or erythema, and she had normal strength, range of motion, and symmetric gait. She had some mild plantar left heel pain, receiving an injection for plantar fasciitis (Exhibit 25F, p. 8).

In February 2024, the claimant reported having numbness in her left leg after surgery during a primary care exam. While indicating a sensory deficit, clinical findings were otherwise unremarkable, showing normal gait and no acute distress (Exhibit 24F, p. 13). In March 2024, she was referred for electromyography studies showing mild polyneuropathy. Clinical findings at this time noted absent ankle reflexes and sensory deficits;

> however, the claimant had normal strength (Exhibit 23F, p. 9; 27F). Overall, the claimant's allegations of 10+ pain levels are inconsistent with these evaluations, showing normal strength, gait, and generally intact monofilament testing. As such, the undersigned finds the claimant's status-post bunion surgery, status-post heel spur surgery, and mild polyneuropathy non-severe in nature, as there was no evidence supporting these impairments caused more than minimal limitations for any continuous 12-month period.

(AR at 21-22.)

Here, the ALJ thoroughly reviewed and considered the medical evidence in the record and outlined by Claimant in her brief. The ALJ also thoroughly explained his reasons for finding Claimant's left foot issues non-severe. On this issue, I find that the record is fully and fairly developed and a consultative examination is not necessary because the ALJ had sufficient medical evidence to make his decision. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I recommend that the Court affirm the ALJ on this issue.

## *IV. CONCLUSION*

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM in part** and **REVERSE and REMAND in part** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well

as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 10th day of September, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa